# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVE STEVENSON<br><br>  Plaintiff,<br><br>  v.<br><br>WINDMOELLER & HOELSCHER CORP.,<br><br>  Defendant. | Case No. 19-cv-52<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steve Stevenson injured his back while working for his former employer on a piece of industrial equipment branded the "Primaflex." He sued the manufacturer of the Primaflex, Defendant Windmoeller & Hoeschler Corp., for design defect under negligence and strict liability theories, claiming that Defendant created an unreasonably dangerous product causing his injury. Defendant now moves for summary judgment. [76]. For the reasons explained below, this Court grants Defendant's motion.

I.  Background

   A.  The Parties

Among other products, Defendant manufactures "extrusion equipment," meaning equipment that extrudes plastic into plastic film substrate. [77] at ¶ 15. In particular, Defendant's Primaflex machine prints flexible packaging and non-rigid containers, like plastic bread bags and potato chip bags. *Id.* at ¶ 16.

1

As of January 12, 2016, Plaintiff worked as an employee for Bema Printing, a commercial printing company in Elmhurst, Illinois. *Id.* at ¶ 4. Bema Printing hired Plaintiff as a pressman and assigned him to use a Primaflex printing press. *Id.* at ¶ 5.

B.  **The Primaflex**

Between 2001 and 2011, Defendant manufactured and sold 176 Primaflex machines to printing company customers. *Id.* at ¶ 17. The Primaflex machine stands at seventeen to eighteen feet tall, comprises several different levels or print "decks," and contains a control panel located on the machine five feet off the ground. *Id.* at ¶¶ 21–22. The Primaflex also contains an operator pendant—a portable controller with a ten-foot cord—which allows the pressman to control print decks. *Id.* at ¶ 23. Although Defendant asserts that the operator pendant hangs on a cradle on the Primaflex when not in use, *id.* at ¶ 25, Plaintiff claims that when a pressman does not place the pendant back in the cradle, "it is left to sprawl on the floor," [83] at ¶ 25.

The Primaflex also contains two ladders, which allow a pressman to access the print decks or the upper level of the machine. [77] at ¶ 26. One of the ladders stands at eight feet and remains stationary and hooked to the machine unless someone removes it; this ladder ordinarily rests adjacent to, not above, the operator pendant and its cord. *Id.* at ¶¶ 27–28, 31. Defendant designed this eight-foot ladder to be stored on an existing ladder mount, hooked into connection points on the top of the ladder, on the opposite side of the machine from the operator pendant. *Id.* at ¶ 35.

The other ladder is longer and designed to be mounted to the front of the machine to access the top or mezzanine level of the machine. *Id.* at ¶ 29.

Defendant also manufactures or has manufactured other types of press machines with different types of operator pendants. For instance, Defendant began manufacturing Miraflex II in 2014; this press machine includes both a wired operator pendant and a wireless operator pendant. [84] at ¶ 13; [84-1] at 6. Another model, the Astraflex, contained a retractable operator pendant; Defendant produced the Astraflex between the mid-1990s to 2008, but discontinued it because the retractable mechanism consistently broke. [84] at ¶ 14; [77-4] at 16. Defendant also began producing Vistaflex in 2008, and that model comes with a ladder and an elevator-like lift system. [84] at ¶ 15; [84-1] at 9. The lift system exists, according to Defendant, because the Vistaflex is a much taller machine than the Primaflex. [84] at ¶ 15.

### C. Plaintiff's Accident

Plaintiff claims that, during a shift on January 12, 2016, he intended to clean a printing plate on Deck 10 of the Primaflex because it was "running dirty." [77] at ¶ 44. To access Deck 10, Plaintiff needed to use the eight-foot ladder, and so he went to remove the ladder from the left side of the Primaflex. *Id.* at ¶ 47. According to Plaintiff, when he approached the ladder, he saw that the ladder "was overlaying the operator pendant to the left side of the rear doors" of the Primaflex. *Id.* at ¶ 48. The ladder was hanging, not touching the ground, when Plaintiff lifted the ladder upwards with both hands. *Id.* at ¶¶ 50–51. According to Plaintiff, he lifted the ladder upward to release it from its bar, and at some point, the cord of the operator pendant

3

hooked around the ladder. *Id.* at ¶¶ 52–53. As Plaintiff tried to walk with the ladder, he twisted and hurt his left shoulder and back. *Id.* at ¶ 63. No one witnessed this accident. *Id.* at ¶ 45. After the accident, Plaintiff underwent an MRI and surgery. [84] at ¶ 12.

Plaintiff sued Defendant for design defect under both negligence and strict products liability theories, claiming that the eight-foot ladder's ability to overlay the operator pendant constituted an unreasonably dangerous condition causing his injury. [1-1] at ¶¶ 24–42; *see* [82] at 4–5, 6–7 (characterizing his claims as design defect claims).

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy this burden, the non-moving party "must do more than simply

4

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. Analysis

Defendant has moved for summary judgment on both of Plaintiff's design defect claims. [76]. Plaintiff has opposed this motion. [82]. As detailed below, this Court finds that Plaintiff fails to create a genuine issue of material fact as to either claim, thus warranting summary judgment in Defendant's favor.

### A. Illinois Products Liability Law

This Court begins with an overview of Illinois law on design defect. Plaintiff asserts design defect claims under both strict liability and negligence theories against Defendant. [1-1] at ¶¶ 24–42; *see* [82] at 4–5, 6–7.

Under Illinois law, which the parties agree applies, the distinction between strict liability and negligence lies in the concept of fault. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007). In a strict liability claim, the analysis focuses solely upon the condition of the product, whereas, in a negligence claim, the condition of the product and fault are both at issue. *Id.*; *see also Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 987 (N.D. Ill. 2010), *aff'd*, 659 F.3d 584 (7th Cir. 2011).

Nonetheless, strict liability and negligence design defect claims also bear similarities. The "threshold question" for both strict liability and negligence design

5

defect claims is whether a product "is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function." *Baltus v. Weaver Div. of Kidde & Co.*, 557 N.E.2d 580, 586 (Ill. App. Ct. 1990); *see also Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 111 (Ill. App. Ct. 2010). Plaintiff must additionally prove proximate causation under both theories. *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 439 (7th Cir. 2019) (strict liability); *Malen v. MTD Prod., Inc.*, 628 F.3d 296, 307 (7th Cir. 2010) (negligence).

As the non-moving party, Plaintiff bears the burden of going beyond the pleadings and demonstrating the existence of genuine issues for trial on one or more elements of his claims. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 896 (7th Cir. 2018). As detailed below, Plaintiff falls short for several reasons.

### B. Lack of Expert Testimony

First, Illinois courts recognize that product liability actions "often involve specialized knowledge or expertise outside the layman's knowledge." *Baltus*, 557 N.E.2d at 588; *see also Henry v. Panasonic Factory Automation Co.*, 917 N.E.2d 1086, 1092 (Ill. App. Ct. 2009); *Show v. Ford Motor Co.*, 659 F.3d 584, 585 (7th Cir. 2011) ("Several intermediate appellate decisions in Illinois say that expert testimony is vital in design-defect suits when aspects of a product's design or operation are outside the scope of lay knowledge."). Accordingly, courts require expert testimony "in at least some products liability cases to prove that a product defect was unreasonably dangerous and proximately caused the plaintiff's injuries." *Show*, 697 F. Supp. 2d at 982; *see also Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 899 (7th Cir. 2011); *Lott*

6

*v. ITW Food Equip. Grp. LLC*, No. 10 CV 1686, 2013 WL 3728581, at *25 (N.D. Ill. July 15, 2013).

In *Clark v. River Metals Recycling, LLC*, the Seventh Circuit provided guidance on when such expert testimony is necessary, noting that "there might be some products that are so simple that no expert is needed to tell people how to use them." 929 F.3d 434, 440 (7th Cir. 2019). A design defect claim involving a chair, for example, does not require expert testimony given that lay jurors could understand its properties and design based upon their "common experience." *Id.* But in other cases involving more complex, specialized equipment—such as the car-crushing machine at issue in *Clark*—plaintiffs must present expert testimony to overcome summary judgment. *Id.* When the plaintiff in *Clark* failed to present admissible expert testimony on that issue, the Seventh Circuit affirmed summary judgment in favor of the defendants on the plaintiff's design defect claim. *Id.*

Here, like the car-crushing machine in *Clark*, the Primaflex machine is not a product that lay jurors commonly see or use, but rather a specialized piece of industrial equipment that the vast majority of the population has never seen or used. Thus, Plaintiff needed to present expert testimony to prove that the Primaflex's design, in fact, rendered it unreasonably dangerous, and that the unreasonably dangerous design caused his injuries. He did not, and such failure alone is fatal to his claims. *See Clark*, 929 F.3d at 440; *see also, e.g., Kirk v. Clark Equip. Co.*, 991 F.3d 865, 879 (7th Cir. 2021) (affirming summary judgment on design defect claims where the plaintiff lacked admissible expert testimony regarding the design of a

7

specialized piece of industrial equipment); *Henry*, 917 N.E.2d at 1092 (affirming summary judgment where the plaintiff lacked expert testimony on whether an industrial machine was unreasonably dangerous); *Fulton v. Theradyne Corp.*, No. 06 C 1321, 2007 WL 772953, at *4 (N.D. Ill. Mar. 12, 2007) (granting summary judgment on design defect claim where the plaintiff failed to present admissible expert evidence regarding the design of a medical device); *Horne v. Home Depot U.S.A., Inc.*, No. 17 CV 8080, 2019 WL 556709, at *7 (N.D. Ill. Feb. 12, 2019) (granting summary judgment to defendant where the plaintiff failed to present expert testimony relating to whether a drain-cleaning machine was defectively designed and proximately caused his injuries).

Although the absence of expert testimony alone dooms Plaintiff's claims,[1] this Court will also address other, independent deficiencies entitling Defendant to summary judgment.

### C. Insufficient Evidence Under a Negligence Theory

As discussed above, negligence rests upon the concept of fault, and thus, "the key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product." *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011). The Illinois Supreme Court has directed courts to use a "risk-utility" test to determine whether a manufacturer has exercised reasonable care, and

---

[1] Seemingly recognizing as much, Plaintiff asked this Court to appoint an expert at Defendant's expense under Fed. R. Evid. 706(a). *See* [79]. This Court denied the motion because that Rule provides for the appointment of a neutral expert, not an expert to take Plaintiff's side. *See* [80]. As this Court advised at that time, Plaintiff also could have retained his own expert and sought reimbursement for such expert's fees. *Id.* But he elected not to do so.

that test "encompasses a balancing of the risks inherent in the product design with the utility or benefit derived from the product." *Id.* These factors include: (1) the availability and feasibility of alternate designs at the time of manufacture; (2) whether the design conformed to industry standards; (3) utility of the product to the user and public; (4) safety aspects of the product; and (5) the manufacturer's ability to eliminate unsafe components without impairing its utility. *Id.*; *see also Clark*, 929 F.3d at 439.

Plaintiff submits insufficient evidence from which a jury could conclude, after balancing the above factors, that Defendant failed to exercise reasonable care in designing the product. The record contains no evidence of industry standard or Defendant's ability to eliminate any unsafe conditions inherent in the Primaflex machine without compromising its utility. The only factor Plaintiff attempts to address is the availability of feasible design alternatives to the Primaflex, and on this point, he posits that the Primaflex's "lengthy" operator pendant cord, combined with the necessary use of the eight-foot ladder, constitutes the defect that caused his injury. [82] at 5. Attempting to show that that Defendant could have designed the Primaflex in a way that would prevent the operator pendant cord from entangling with the ladder, Plaintiff points to evidence that Defendant has manufactured other types of press machines with different cord and/or ladder mechanisms: the Miraflex, which includes both wired and unwired operator pendants; the Astraflex, which contained a retractable operator pendant; and the Vistaflex, which used a hydraulic lift system. [84] at ¶¶ 13–15.

9

The mere existence of these other models, however, does not amount to evidence of a feasible alternative design. Initially, the relevant inquiry is whether there existed alternative designs *at the time* of the Primaflex's manufacture, not at the time of Plaintiff's injury. *Jablonski*, 955 N.E.2d at 1154. Thus, evidence concerning the Miraflex, which Defendant did not begin manufacturing until 2014, is irrelevant to whether a feasible alternative existed in 2001 through 2011, when Defendant manufactured the Primaflex. [77] at ¶ 17; [84] at ¶ 13; [84-1] at 6; *see, e.g.*, *Assaf v. Cottrell, Inc.*, No. 10 C 85, 2012 WL 4177274, at *3 (N.D. Ill. Sept. 19, 2012) (finding evidence about alternative designs available in 2005 and 2009 irrelevant to whether a feasible alternative design existed in 2003, the year the product at issue was manufactured).

Nor has Plaintiff demonstrated that the various features in any of Defendant's other models—unwired pendant, retractable pendant, hydraulic lift—could have been applied to the Primaflex in a way that is actually "feasible in terms of cost, practicality and technology." *Blue*, 828 N.E.2d at 1139. The evidence actually shows quite the opposite. For instance, Defendant discontinued the Astraflex (produced between 1990 to 2008) because the operator pendant's retractable mechanism consistently broke. [84] at ¶ 14; [77-4] at 16. Thus, while the retractable nature of the operator pendant might arguably provide some safety benefit, the retractable design clearly had flaws rendering it infeasible or undesirable for continued production. Moreover, the Vistaflex, the machine containing the hydraulic lift system, is much taller than the Primaflex, [84] at ¶ 15, and Plaintiff has not

10

demonstrated how, in terms of cost and practicality, a similar lift system could have been implemented on the shorter Primaflex machine.

Finally, in addition to the above deficiencies, Plaintiff also fails to present any evidence (or argument) showing that an alternative design, such as a retractable operator pendant or a hydraulic lift system, would actually render the Primaflex safer.  After all, if "the proposed alternative is only equally safe or less safe than the accused product, there would be no point of proposing it as an alternative." *Wielgus v. Ryobi Techs., Inc.*, 893 F. Supp. 2d 920, 926 (N.D. Ill. 2012); *see Stallings v. Black & Decker (U.S.), Inc.*, 796 N.E.2d 143, 149 (Ill. App. Ct. 2003) (noting that "manufacturers should not be held accountable if *safer alternatives* were not feasible") (emphasis added).

In sum, Plaintiff produces no evidence—in view of the risk-utility factors—from which a reasonable fact-finder could conclude that Defendant's conduct in designing the Primaflex fell below the standard of reasonable care.  Therefore, in addition to being deficient for lack of expert testimony, Plaintiff's negligent design defect claim also fails to establish Defendant's fault.  *See Couture v. Haworth, Inc.*, No. 16-CV-4153, 2020 WL 70931, at *8 (N.D. Ill. Jan. 7, 2020) (granting summary judgment due to the plaintiff's failure to present evidence of deviation from ordinary care)

### C. Insufficient Evidence Under a Strict Liability Theory

Similarly, Plaintiff fails to create a triable issue on his strict liability design defect claim.  In assessing whether a plaintiff has proven that a product is unreasonably dangerous, Illinois courts use two different approaches: (1) the

11

aforementioned risk-utility test also used in analyzing fault in the negligence context; and (2) the consumer-expectations test, which asks if the product fails to perform as safely as an ordinary consumer would expect. *Clark*, 929 F.3d at 439; *Gillespie v. Edmier*, 136 N.E.3d 1029, 1039 (Ill. App Ct. 2019). Where, as here, the evidence implicates the risk-utility test, that is the one that courts use. *Suarez v. W.M. Barr & Co., Inc.*, 842 F.3d 513, 520 (7th Cir. 2016); *Clark*, 929 F.3d at 439 (noting that "if the evidence before the court implicates the risk-utility test, it is the one that the court should use").

Here, as in Plaintiff's negligent design defect claim, Plaintiff attempts to show that the balance of the risk-utility factors tilts in his favor because Defendant produces or has produced different press machines with dissimilar pendant or ladder systems. But as discussed above, such evidence remains insufficient to raise a triable issue on the feasibility of alternative designs, and Plaintiff submits no other evidence on the other risk-utility factors. Because no reasonable jury could find in Plaintiff's favor on this record, this Court grants summary judgment to Defendant on this basis as well.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion for summary judgment [76]. The Clerk is directed to enter judgment in Defendant's favor. All dates and deadlines are stricken. Civil case terminated.

Dated: May 18, 2021

Entered:

John Robert Blakey
United States District Judge